UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20478-CR-MARRA/SELTZER

UNITED STATES OF AMERICA,

vs.

TIMOTHY RAFFERTY,
a/k/a "Tim Rafferty,"

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON PETITION OF MARIE RAFFERTY FOR A HEARING PURSUANT TO 21 U.S.C. § 853(n)

THIS CAUSE is before the Court on the Petition of Marie Rafferty for a Hearing pursuant to 21 U.S.C. § 853(n)[1] (DE 297) and was referred to United States Magistrate Judge Barry S. Seltzer pursuant to Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida. For the reasons set forth herein, the undersigned RECOMMENDS that the Motion be GRANTED in part and DENIED in part.

I.    PROCEDURAL HISTORY

On October 3, 2005, the grand jury returned a Second Superceding Indictment charging Timothy Rafferty ("Defendant") of conspiracy to commit securities fraud, conspiracy to commit mail and wire fraud, and wire fraud, in violation of 18 U.S.C. §§ 371, 1343, and 1349 (DE 136). As charged in the Indictment:

---

[1] Although the Petition seeks a hearing, which the undersigned conducted on May 1, 2007, it further seeks a finding that Petitioner is the sole owner of, and that Defendant has no interest in, certain properties – a residence and an automobile – that were the subject of the Court's Amended Preliminary Order of Forfeiture.

> It was the purpose of the conspiracy for Timothy Rafferty and his co-conspirators to unjustly enrich themselves by soliciting individuals to invest monies in <u>UMDA and other companies</u>, through the use of material misrepresentations and omissions of material facts concerning, among other things, the use and ultimate destination of investors' funds, investors' expected returns, UMDA's financial condition and its profitability, and the backgrounds of Timothy Rafferty and Lawrence W. Gallo.

Second Superceding Indictment at 3, 9 (DE 136) (emphasis added). The Indictment also contained a Forfeiture Allegation, which stated that upon conviction of any of the charged offenses, Defendant "shall forfeit to the United States . . . any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses," including but not limited to: $1,616,771 in U.S. currency; real property located at 7 Willow Street, Douglaston, New York; and a BMW X5 sport utility vehicle. Id. at 12 (DE 136). The trial testimony revealed that Defendant had raised funds from investors and directed them to send the funds to a variety of nominee bank accounts that were under his control. The trial testimony further revealed that after the funds came into these accounts, they were utilized to pay for a variety of Defendant's personal expenses, including a BMW automobile and a home mortgage; underlying bank records corroborated this testimony.

On April 10, 2006, a jury returned a verdict finding Defendant guilty of all four counts charged in the Second Superceding Indictment (DE 205). On that same date, after Defendant waived a jury trial on the forfeiture allegations, the Court conducted a hearing (DE 208). On September 20, 2006, the Court entered an Amended Preliminary Order of Forfeiture (DE 271), in which it found "that the government has established, by a preponderance of the evidence, the requisite nexus between the assets indicated for forfeiture and the offenses of the conviction" (DE 271). See Sentencing Transcript, p. 23, lines 16-25 and p. 24, lines 1-5. The Order also set forth a procedure to govern the filing

of third party petitions to the forfeited property.

On November 9, 2006, the Petition of Marie Rafferty[2] for a Hearing Pursuant to 21 U.S.C. § 853(n) was filed in this matter. Marie Rafferty ("Petitioner") asks this Court to adjudicate that she is the sole owner of the real property located at 7 Willow Street, Douglaston, New York, as well as the BMW X5 (DE 297).[3] The United States has responded to the Petition (DE 306), and Petitioner has replied thereto (DE 317). The parties have also engaged in discovery.

On May 1, 2007, the undersigned conducted a hearing on Petitioner's claim and received her testimony. On May 23, 2007, and again on June 7 and 8, 2007, the undersigned received supplemental memoranda from Petitioner, Defendant, and the Government (DE 359, 360, 363, 364).

The matter is now ripe for review.

II.  THE LAW

The statutory authority for the forfeiture of Defendant's assets is 18 U.S.C. § 981(a)(1)(C), which subjects to forfeiture to the United States "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity.'" See United States v. Betancourt, 422 F.3d 240, 250-52 (5th Cir. 2005) (entire amount of defendant's interest in winning lottery ticket purchased with drug proceeds subject to forfeiture); United States v. Martinez, 228 F.3d

---

[2] Marie Rafferty is the wife of Defendant Timothy Rafferty. She has also been known as Marie L. Randazzo.

[3] Petitioner has now conceded that she cannot show a sufficient interest in the BMW X5 to prevent its forfeiture. Accordingly, this Report and Recommendation will discuss Petitioner's claim to the Willow Street property only.

587, 590 (5th Cir. 2000) (proceeds of criminal activity for which defendant is convicted and any property acquired with such proceeds can never belong to third party); see also United States v. Genova, 333 F.3d 750, 762 (7th Cir. 2003) (court must determine how much of appreciated value represents proceeds of the crime); United States v. Hill, 46 Fed. Appx. 838, 839 (6th Cir. 2002) (district court properly ordered forfeiture of appreciated value of forfeited stock). As defined in the statutes, "specified unlawful activity" includes the fraud offenses charged in the Second Superseding Indictment. See 18 U.S.C. §§ 1957(c) and 1961(1).

A criminal forfeiture is adjudicated in the manner set forth in Federal Rule of Criminal Procedure 32.2. That Rule provides that when the Government has alleged forfeiture of specific property, following the return of a guilty verdict, the court must determine whether the Government has established the requisite nexus between the property alleged for forfeiture and the offense(s) of conviction. Fed. R. Crim. P. 32.2(b)(1). The Rule further provides that if the court does find that the specified property is subject to forfeiture, it must enter a preliminary order of forfeiture directing the forfeiture of specific property without regard to any third party's interest in all or part of the property. Id. at 32.2(b)(2). The preliminary order of forfeiture becomes final at the time of sentencing; it must be made part of the sentence and be included in the judgment. Id. at 32.2(b)(3). If a third party files a petition asserting an interest in the property to be forfeited, the court must then conduct an ancillary hearing to determine the validity and extent of such third party's interest. Id. at 32.2(c)(1). If such (third party) petitioner establishes by "a preponderance of the evidence" that she has a legal interest in the property that renders the order of forfeiture invalid because such interest was vested in her, rather than the

defendant, or because such interest was superior to any interest of the defendant at the time of the acts giving rise to the forfeiture, then the court must amend its preliminary order of forfeiture and enter a final order of forfeiture that accounts for the rights of the petitioner. 21 U.S.C. § 853(n)(6); see Fed. R. Crim. P. 32.2(c)(2).

III.  ISSUE

The Court must determine the extent of Petitioner's interest in the Willow Street property. To do so here, it must first determine the extent of Defendant's "interest in [the] property, by virtue of the criminal charges against him." United States v. Gilbert, 244 F.3d 888, 920 (11th Cir. 2001). More specifically, the Court must determine the amount of the proceeds from Defendant's fraudulent solicitation of investments in "UMDA and other companies" that he invested in the property's mortgage, as well as any subsequent appreciation on those invested proceeds. Once the Court determines the extent of Defendant's tainted interest in the Willow Street property, it must forfeit only that interest, leaving any remaining interest to Petitioner. Id. ("Forfeiture of the convicted defendant's interest in illicitly obtained property appropriately punishes the defendant by separating him from his [criminal] gains while leaving undisturbed the interests of innocent third parties who are beyond the court's jurisdiction.").

IV.  DISCUSSION

Petitioner and Defendant were married in November 1989. In April 1996, the Willow Street property was purchased for $575,000; approximately $375,000 was paid at or before closing, and the remaining $200,000 was financed through a mortgage on the property.[4]

---

[4] On December 5, 2006, Greenpoint Mortgage Funding, Inc. submitted a Verified Claim (DE 321) stating that as of December 29, 2006, the unpaid principal balance on

At the hearing, Petitioner testified that she has resided at the Willow Street property since its purchase. She stated that the down-payment came from a joint trading account that she and Defendant maintained – an account that Petitioner had funded with her savings. Petitioner and Defendant decided to title the property solely in Petitioner's name to compensate her for losses she and her family had sustained after investing in a failed business launched by Defendant's father. Petitioner further testified that the monthly mortgage payments for the residence have been made with the proceeds of the joint trading account.[5] She disclaimed any knowledge of mortgage payments emanating from other sources. The evidence at trial, however, showed otherwise.

The Government's trial testimony established that during the period of the charged conspiracy (March 2003 to February 2004), Defendant diverted $24,538 of investor funds into ten mortgage payments on the Willow Street property. <u>See</u> Summary Chart (Ex. A to United States' Supplemental Memorandum (DE 360)); <u>see also</u> Second Superceding Indictment at 3, 9 (alleging fraud in soliciting the investment of monies into "UMDA and other companies").[6] At the sentencing, however, the Court found that (for purposes of

---

Petitioner's promissory note was $55,203.36. The Verified Claim appears to simply provide the Court with notice of its interest (to the extent of the outstanding balance) in the Willow Street property. The Verified Claim does not request, nor (in light of Petitioner's interest) does the undersigned recommend, that Greenpoint be awarded any relief. Greenpoint has a preexisting lien on the property that should not be affected by the undersigned's recommendation herein that the Government now also be given a lien on the property.

[5] Additional assistance with the upkeep and maintenance of the property comes from Petitioner's mother and brother, who also moved into the home soon after its purchase.

[6] The undersigned notes that both Petitioner and Defendant have argued that in calculating the forfeiture amount, the Court should only consider monies intended for

calculating the amount of loss) the conspiracy commenced on April 21, 2003. See Sentencing Transcript, p. 6, lines 19-25. Accordingly, a March 6, 2003 payment of $2,350 that was included in the Government's sum of diverted funds must be excluded, leaving a revised sum of $22,188.

At the May 1, 2007 hearing before the undersigned, the Government submitted documentation (" Drive By BPO Report for Asset") based on comparable sales showing that the Willow Street property was worth $1,120,512 in 2003. See Drive By BPO Report (Gov't Ex. 2 at ancillary hearing). The Government also submitted an Appraisal Report showing that the property was worth $2,000,000 as of March 2007. See Appraisal Report (Gov't Ex. 3 at ancillary hearing). The March 2007 Appraisal Report was produced by a certified appraiser, but it was based on an "exterior-only inspection," as "no interior access

---

investment in UMDA that were subsequently utilized to pay the mortgage. At the ancillary hearing, Petitioner's counsel stated that this amount should be $5,000; Defendant's counsel stated that it should be $2,500 based on the Court's finding of a nexus in this amount at sentencing. Transcript of May 1, 2007 hearing at 5, 8. But see Sentencing Transcript at 23-24 (Court stating that $2,000 of UMDA funds went into mortgage). The undersigned, however, is not persuaded that the forfeiture should be so limited.

The Second Superceding Indictment charges – and Defendant was convicted of – securities and mail and wire fraud conspiracies with respect to his soliciting investments not only in UMDA, but in "UMDA and other companies." (DE 136). The investors here relied upon Defendant's overall misrepresentations and material omissions in making their investments, whether in UMDA or other companies. By way of example, the indictment alleges that "[t]o induce investors to invest monies, Timothy Rafferty . . . omitted to state material facts." Second Superceding Indictment at 4 (DE 136). As set forth in the indictment, Defendant's material omissions included his outstanding civil judgments for defrauding investors, his criminal conviction for securities fraud, and his being permanently enjoined by a federal court from committing further violations of the securities laws. Id. at 6. Such material omissions bore on all the investments, whether intended for UMDA or "other companies." Because Defendant's fraudulent conduct – for which he was charged and convicted – affected investments in "UMDA and other companies," the undersigned concludes that the forfeiture calculations should include proceeds derived from the entirety of the securities and mail and wire fraud schemes.

7

was granted to the appraiser." Id. at 3 (Gov't Ex. 3 at ancillary hearing). The Government's documentation, therefore, shows a 78%[7] appreciation in the value of the Willow Street property from the time of the tainted mortgage payments to the present.

Petitioner submitted a letter from a licensed broker showing that the property had an approximate value of $800,000 in 2003 and an approximate value of $1.2 million in 2007. See April 27, 2007 letter from licensed broker to counsel (Petitioner's Ex. 1 at ancillary hearing). Petitioner's broker, however, cautioned that her numbers were only "average estimate[s]" and were "not a certified appraisal." Id. She based her estimate on her experience, having sold and acquired familiarity with other properties in the neighborhood. Id. She added, however, that the house had not been maintained and, for that reason, would draw only land value if it were marketed today. See id. Petitioner's documentation, therefore, shows a 50% appreciation in the value of the Willow Street property from the time of the tainted mortgage payments to the present.

The undersigned is mindful that assessments of real estate values are often subject to legitimate disagreement. Here, the Government did secure the services of a certified appraiser. The certified appraiser, however, provided only a current value, and she did so based on an exterior inspection only. The Government's starting date value appears to be based on comparable sales. By contrast, Petitioner submitted values compiled by a licensed broker who did enter the residence (and also considered comparable sales). The broker, however, stressed that she is not a certified appraiser and that she could provide only "average estimate[s]." Because each party's submission has some merit, yet also

---

[7] The actual appreciation rate is 78.48%. The undersigned has rounded the numbers for purposes of this calculation.

8

some deficiencies, the undersigned believes that the best measure of the actual appreciation in the property is a blended number, an average of the Government's 78% and Petitoner's 50%.[8] Accordingly, the undersigned finds that the rate of appreciation on the property from the time of the tainted mortgage payments to the present is 64%. Because the property into which Defendant invested the criminal proceeds appreciated by 64%, so too the proportionate value of his investment – his "interest" – in the property appreciated by 64%. Appreciation of 64% on an investment of $22,188 increases the value of the investment or interest in the property by $14,200. Accordingly, given that Defendant invested $22,188 of tainted proceeds into the property, which proceeds appreciated by $14,200, the current value of Defendant's interest in the property is $36,388.[9]

---

[8] The blended 2003 value is $960,256 (($1,120,512 + $800,000)/2), and the blended 2007 value is $1,600,000 (($2,000,000 + $1,200,000)/2).

[9] An alternative approach, which yields approximately the same final value (differences attributable to rounding numbers), focuses on the percentage of Defendant's interest in the property. His $22,188 mortgage payment at a time when the property had a (blended) value of $960,256 resulted in his acquiring a 2.3% interest in the property. That same 2.3% interest at the current (blended) value of $1,600,000 would be worth $36,800. See United States v. Loe, 49 F. Supp. 2d 514, 523 (E.D. Tex. 1999) ("Here, 52.6% of the purchase funds was tainted property, therefore, the United States' interest is limited to this portion.").

The undersigned has considered but rejected the Government's calculations. See Ex. B to Government's Supplemental Memorandum (DE 360). Working from the property values that it had proffered ($1,120,000 in 2003 and $2,000,000 in 2007), the Government reasoned that the property had appreciated 78%, or $888,000 over 4 years, or $220,000 per year. Proceeding on the assumption that Defendant had made 83% of – that is, 10 of the 12 – mortgage payments over the course of the year charged in the conspiracy, the Government reasons that it should be entitled to 83% of the $220,000 amount by which the property appreciated that year – $183,260. In essence, the Government contends that the 10 mortgage payments were responsible for the value of the property increasing by $183,260. Yet, the Government's contention disregards the vast majority of non-tainted monies that had been invested in the property and the mortgage, without which there could

V.   CONCLUSION

In its Amended Order of Forfeiture, the Court ordered that "all right, title and interest of defendant TIMOTHY RAFFERTY" in "the real property located at 7 Willow Street, Douglaston, Queens County, New York, titled in the name of Marie L. Randazzo" be forfeited to the United States. Amended Preliminary Order of Forfeiture ¶ 1(a) (DE 271). However, Petitioner has established that she purchased the Willow Street property approximately seven years before the fraud charged in the Second Superceding Indictment and that she has resided at the property since the date of purchase. Furthermore,

---

not have been any appreciation at all. Then, adding to this $183,260 appreciation the $24,538 in tainted mortgage payments that it had alleged, the Government concludes that the current value of Defendant's tainted interest in the property is $207,798.

The flaw in the Government's logic, and the inequity in its approach, is highlighted by examining Defendant's percentage interest in the property. Utilizing the Government's own numbers, at the time Defendant paid the tainted $24,538 to the mortgage, his resulting interest in the property was 2.2% ($24,538/$1,120,512) of its then-current value. Yet, by asking this Court to find Defendant's current interest in the property to be valued at $207,798, it is now seeking forfeiture of 10.4% ($207,798/$2,000,000) of the property's current value. Stated differently, the Government (standing in Defendant's shoes) seeks forfeiture of 10.4% of the property even though Defendant's mortgage payments gave him only a 2.2% interest therein. But see Loe, 49 F. Supp. 2d at 524 (holding that parties "should share in any appreciation of the property in relation to their ownership interests"). The gross inequity in the Government's proposed approach is even more starkly revealed by examining the Government's proposed percentage increases in the value of Defendant's mortgage payments and the value of the property. The Government contends that it should be entitled to recoup via forfeiture not only the original tainted mortgage payments of $24,538, but also appreciation on these mortgage payments of 747% ($183,260/$24,538), notwithstanding that the property itself (by the Government's own estimate) appreciated only 78% during that period of time.

The undersigned rejects the Government's approach. It would have this Court order forfeiture of 10.4% of the property's value, notwithstanding that the tainted mortgage payments gave Defendant only a 2.2% interest therein; it would also result in the Government obtaining a windfall – 747% appreciation on tainted proceeds paid into a property that appreciated only 78%. See e.g., Loe, 49 F. Supp. 2d at 523 (stating, where Government sought to forfeit all of a property's appreciation, "The Court does not believe that forfeitability spreads like a disease from one [infected dollar] to the entire interest in the property . . . .") (citations and internal quotations omitted) (brackets in original).

10

Petitioner has established that the down-payment and all but 10 of the mortgage payments were made with funds unrelated to the charged fraud. Accordingly, it is respectfully RECOMMENDED that the Petition of Marie Rafferty for a Hearing pursuant to 21 U.S.C. § 853(n) (DE 297) be GRANTED to the extent that the Amended Preliminary Order of Forfeiture be revised at paragraph 1(a) to state that Defendant's forfeited interest in the Willow Street property is limited to the sum of $36,388, for which amount the United States shall have a lien.[10] In all other respects, it is RECOMMENDED that the Petition of Marie Rafferty (DE 297) be DENIED.[11]

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Kenneth A. Marra, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted

---

[10] See United States v. Harry, 831 F. Supp. 679, 688 (N.D. Iowa 1993) (stating that if homeowners had utilized $9,600 in drug proceeds to make their final mortgage payment, then Government "likely would be entitled to a lien against" homeowners in that amount).

[11] Petitioner had also sought from the Court a finding that she is the sole owner of the BMW X5 vehicle and that Defendant has no right, title, or interest therein. However, she has since conceded that she cannot show a sufficient interest in the BMW X5 to prevent its forfeiture. See supra n. 3.

or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989)

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 8 day of June 2007.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable Kenneth A. Marra
United States District Judge

Lothar R. Genge, Esq.
4544 N.W. Red Maple Drive
Jensen Beach, Florida   34957
Attorney for Defendant Timothy Rafferty

Catherine P. Cox, Esq.
1277 N.W. 85th Ter.
Coral Springs, Florida   33071
Attorney for Defendant Timothy Rafferty

Eric Martin Cohen, Esq.
9130 S. Dadeland Boulevard
Miami, Florida   33156-7858
Attorney for Petitioner Marie Rafferty

Wilfredo Fernandez, Esq.
Arimentha R. Watkins, Esq.
United States Attorney's Office
99 N.E. 4th Street
Miami, Florida   33132-2111

Irene D. Gilbert, Senior Vice President
Greenpoint Mortgage Funding, Inc.
100 Wood Hollow Drive
Novato, California   94945

12